NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 9, 2020
Decided June 18, 2020

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 19-3167

| | |
|---|---|
| LAWRENCE NORTHERN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 16-cv-277-jdp |
| | |
| LYNN DOBBERT, et al., | James D. Peterson, |
| *Defendants-Appellees*. | *Chief Judge*. |

**O R D E R**

This case deals with exhaustion of administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Lawrence Northern, a Wisconsin inmate, sued several prison officials under 42 U.S.C. § 1983 for the medical care that he received after tearing his Achilles tendon. He alleged, in relevant part, that four prison nurses failed to provide him adequate post-surgical wound care in violation of the Eighth Amendment and Wisconsin state law. The district court granted summary judgment in favor of the prison officials, explaining that Northern had not properly exhausted his administrative remedies on these claims. We agree and affirm the judgment.

## Background

While incarcerated at New Lisbon Correctional Institution in January 2013, Northern injured his left ankle during a basketball game. His pain persisted, and in early May, he underwent surgery to repair a tear in his Achilles tendon.[1]  Afterward, a nurse filled out a "medical restrictions/special needs" form noting that Northern should have daily dressings changes until the surgical incision had healed.

Displeased with his medical treatment, Northern filed several grievances through the prison's complaint system, two of which are relevant here. First, in July 2014 (more than a year after his ankle surgery), Northern filed a complaint about the adequacy of his post-surgical wound care. He stated that a nurse refused to change his surgical dressings on four days in May 2013 and that this refusal caused him to suffer "discomfort, pain[,] and eventual disfigurement." The inmate-complaint examiner recommended rejecting Northern's complaint as untimely because more than 14 days had passed since the events that triggered his complaint. *See* WIS. ADMIN. CODE DOC § 310.11(5)(d) (2002) (amended 2018). The reviewing authority agreed and dismissed it.

In August 2014, Northern filed another complaint, asserting that health-services staff have "an unwritten policy of forcing inmates to complete and sign … refusal [of care] forms," which they "carry out … in a retaliatory manner." He listed "deny[ing] access to health care" and "improper use" of co-payments as examples of retaliatory actions. He described, for instance, a February 2013 incident in which a nurse issued him a conduct report after she "insisted" that he sign a refusal-of-care form for a missed medical appointment—an appointment that, Northern said, he had not been properly notified of. Then, three months later, that same nurse "undertook retaliatory actions by refusing to change [his] [wound] dressing" on two occasions. Northern stated that over the next three months, he missed four more appointments due to lack of proper notice and each time he was "forced" to sign a refusal-of-care form. At one point, he added, a nurse told him that if he refused to sign, he still would be charged a co-payment.

---

[1]  Northern sued two prison doctors and a nurse over the five-month delay in treatment, alleging that they failed to properly diagnose his injury. In late 2017, the case proceeded to a federal jury trial against the nurse only, resulting in a $73,000 damages award for Northern. *See Northern v. Frisk*, No. 13-cv-367 (W.D. Wis. Dec. 1, 2017).

The complaint examiner recommended dismissing the August complaint, "noting no retaliatory action has occurred." The examiner concluded that Northern had "provide[d] no hard and fast evidence [of] how he has been retaliated against[;] he simply describe[d] instances where he feels he has been wronged, which does not constitute retaliation." The examiner also noted that many of the listed incidents occurred in 2013, which is "well past the timeframe to submit a complaint." The reviewing officer agreed with the recommendation and dismissed the complaint, finding "[n]o evidence of alleged retaliation." Northern appealed, and the next reviewer also recommended dismissal. Adopting that recommendation, the Office of the Secretary of the Wisconsin Department of Corrections dismissed the complaint.

In April 2016, Northern filed a pro se § 1983 complaint in federal court, alleging that numerous prison officials had denied him adequate medical care and then retaliated against him when he complained about it. As relevant here, he alleged that four nurses violated the Eighth Amendment and state law by failing to provide him adequate post-surgical wound care in May 2013. He also brought retaliation claims against those same nurses for withholding treatment in response to his complaints about his care and against one nurse for forcing him to sign a refusal-of-care form.[2]

The defendants filed two motions for summary judgment. First, early in the case, they moved for summary judgment on the wound-care claims, arguing Northern had failed to properly exhaust his administrative remedies. After obtaining counsel, Northern responded to the motion, arguing he had fully exhausted these claims in his August 2014 inmate complaint. After further proceedings, the defendants filed another summary-judgment motion, this time asking the court to rule in their favor on the merits of Northern's federal claims and to decline supplemental jurisdiction over the state-law claims. In response, Northern voluntarily dismissed his retaliation claims but otherwise opposed the defendants' motion.

The district court granted both summary judgment motions for the defendants. It dismissed Northern's Eighth Amendment wound-care claims with prejudice, ruling that he had failed to properly exhaust them. The court explained that the "thrust" of Northern's August complaint was "the notice errors and retaliation for his refusal to

---

[2] Northern brought additional claims that he does not pursue in this appeal: an Eighth Amendment and state-law claim against a nurse for failing to arrange a lower tier, bottom bunk placement for him, and Eighth Amendment and "class-of-one" equal-protection claims against three officials for denying his requests for special shoes.

sign the refusal-of-treatment form[s]," and, therefore, the complaint examiner "did not address the merits of the underlying adverse action—the wound care—that Northern thought was retaliatory." The court then entered summary judgment for the defendants on the other federal claims and relinquished jurisdiction over the state-law clams.

## Analysis

On appeal, Northern challenges only the district court's conclusion that he failed to exhaust his administrative remedies on his Eighth Amendment wound-care claims, a decision that we review de novo. *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020). By failing to address the court's other rulings, he "[has] forfeit[ed] any arguments he might have that those rulings were wrong," so we need not address them further. *Hackett v. City of South Bend*, 956 F.3d 504, 505 (7th Cir. 2020).

The Prison Litigation and Reform Act ("PLRA") and Wisconsin state law provide the legal framework for our analysis. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 … until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding "the PLRA's exhaustion requirement applies to all inmate suits about prison life"). This provision requires "proper exhaustion," *Woodford v. NGO*, 548 U.S. 81, 93 (2006), but "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion," *Jones v. Bock*, 549 U.S. 199, 218 (2007). Therefore, to exhaust a claim, a state inmate must file timely complaints and appeals in accordance with the state's administrative rules governing prisoner grievances. *See Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019).

Northern argues he exhausted his Eighth Amendment wound-care claims because his August 2014 inmate complaint "alerted the prison that his wounds were inadequately treated as a form of retaliation." As he sees it, the nurse's refusal to change his surgical dressings was the "very basis of the retaliation." Therefore, Northern contends, the district court erred when it construed the examiner's decision as concerning only retaliation and not also wound care, thereby "parsing the facts of the administrative exhaustion process too finely."

We see two flaws in Northern's argument. First, Wisconsin's administrative code provides that an inmate complaint "shall … [c]ontain only one issue per complaint, and shall clearly identify the issue." WIS. ADMIN. CODE DOC § 310.09(1)(e) (2002) (amended 2018). In his August complaint, Northern identified the issue as "[r]etaliatory actions"

by health-services staff when inmates decline to sign refusal-of-care forms—not inadequate post-surgical care for his wound. To be sure, the examiner had to consider the underlying incidents to conclude that "no retaliatory action ha[d] occurred." But retaliation still is a stand-alone "issue." If Northern meant to challenge his wound care specifically, he needed to do so more clearly and in a separate complaint. Indeed, he did so—in the July 2014 complaint. But that complaint was dismissed as untimely and therefore did not exhaust administrative remedies. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (noting "[a]n unseasonable claim … has not been exhausted").

Second, the allegations in the August complaint were insufficient to put the prison on notice that Northern sought redress for inadequate care of his post-surgical wound. An inmate's complaint "will suffice for exhaustion purposes if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'" *Schillinger*, 954 F.3d at 995 (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). But Northern's four-page complaint mentioned wound care only once and only to note that, in an act of retaliation for not signing a refusal-of-care form, a nurse did not change his surgical dressings on two days in May 2013. Nowhere in his complaint did he assert that the lack of dressing changes harmed him in any way. Rather, as he stated, "deny[ing] access to health care" was just an example of the staff's "retaliatory actions."

Northern alternatively asks us to remand the case so that the district court can "properly resolve the issue of exhaustion" at a hearing under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). But an evidentiary hearing is not necessary in this case. "The purpose of a *Pavey* hearing is to resolve disputed factual questions that bear on exhaustion," *Wagoner v. Lemmon*, 778 F.3d 586, 591 (7th Cir. 2015). While in this appeal Northern offers an interpretation of the facts, here the material facts—the contents of the August 2014 complaint—are not in dispute.

For these reasons, the judgment of the district court is AFFIRMED.